UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States,                                                    Case No. 3:20-cr-634

                  Plaintiff,

           v.                                             MEMORANDUM OPINION
                                                        AND ORDER

Andy Ross Thomas,

                  Defendant.

## I.    INTRODUCTION

Defendant Andy Ross Thomas has filed a motion for reconsideration, (Doc. No. 95), of my opinion and order denying his pre-verdict motion for a judgment of acquittal. (Doc. No. 70). The government filed a brief in opposition. (Doc. No. 97). Thomas filed a brief in reply. (Doc. No. 98). For the reasons that follow, I deny his motion.

## II.    BACKGROUND

On December 1, 2021, Thomas was charged by superseding indictment with two offenses: making a false statement during the purchase of a firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2) (Count 1), and possession of a firearm while subject to a protection order in violation of 18 U.S.C. §§ 922(g)(8) and 924(a)(2). (Doc. No. 23). As relevant here, the superseding indictment alleged Thomas possessed a firearm while subject to a June 14, 2019 order of protection, issued by the Lucas County, Ohio Court of Common Pleas, enjoining him from "harassing, stalking, or threatening an intimate partner." (*Id.* at 2). The order provides that Thomas "be restrained from

committing acts of abuse or threats of abuse against Petitioner and other protected persons named in this Order," and that Thomas "shall not abuse, harm, attempt to harm, threaten, follow, stalk, harass, force sexual relations upon, or commit sexually oriented offenses against the protected persons named in this Order." (Doc. No. 65-2 at 2).

Thomas's jury trial began on June 14, 2022. (*See* non-document entry dated June 14, 2022). At the close of the government's case, Thomas orally moved for a judgment of acquittal under Federal Rule of Civil Procedure 29(a), which I took under advisement. (*See id.*) That same day, after the close of all the evidence, Thomas renewed his Rule 29(a) motion in writing. (*See* Doc. No. 69) (filed at 8:54 pm on June 14, 2022).

Thomas argued the government had not presented sufficient evidence he was subject to a qualifying protective order under 18 U.S.C. § 922(g)(8) because the language in his protective order did not "'by its terms explicitly' forbid physical force." (Doc. No. 69 at 3) (quoting 18 U.S.C. § 922(g)(8)). I denied the motion the next day because "the language used in § 922(g)(8)(C)(ii) must be interpreted using 'the ordinary, contemporary, common meaning of its words'" and "the use of the word "abuse" in the June 14 Order of Protection is sufficient to satisfy the requirements of § 922(g)(8)(C)(ii)." (Doc. No. 70 at 2) (filed at 2:24pm on June 15, 2022).

Later that day, a jury found him guilty on both counts. (*See* Doc. No. 74). Ten months later, on April 26, 2023, Thomas moved for leave to file a post-verdict motion to acquit or a motion for a new trial. (Doc. No. 81) At that time, the Fifth Circuit Court of Appeals had recently decided *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), which held that 18 U.S.C. 922(g)(8) was unconstitutional under the Second Amendment. *See Rahimi*, 61 F.4th at 461. Although the Fifth Circuit's ruling was not binding as to Thomas, he urged that "there is a good chance the Court will grant cert," and, as a result, "[t]he outcome of the *Rahimi* case may determine whether Mr. Thomas

will ultimately suffer . . . punishment." (Doc. No. 81 at 3). I denied that motion on June 12, 2023, finding it was untimely. (Doc. No. 83).

The Supreme Court granted certiorari in *United States v. Rahimi* on June 30, 2023. *See United States v. Rahimi*, 143 S.Ct. 2688 (2023). I vacated Thomas's previously-scheduled sentencing in light of the question presented in that case, and his sentencing has not yet been rescheduled. (*See* non-document order dated September 14, 2023). On June 21, 2024, the Supreme Court issued its opinion, reversing the Fifth Circuit and holding that 18 U.S.C. § 922(g)(8) is constitutional both on its face and as applied to that specific defendant under the Second Amendment. *United States v. Rahimi*, 144 S.Ct. 1889, 1903 (2024). On June 25, 2024, in light of *Rahimi*, Thomas filed his motion asking me to reconsider my original opinion and order, (Doc. No. 70), denying the Rule 29 motion he filed before the jury returned a verdict in his case. (Doc. No. 95).

### III. ANALYSIS

#### A. THE GOVERNMENT'S JURISDICTIONAL ARGUMENT

I first address the government's argument that I "lack jurisdiction" to consider Thomas's motion. (Doc. No. 97 at 5). Citing the time limits in Rule 29, the government asserts that "[t]he Notes to" the rule, along with *Carlisle v. United States*, 517 U.S. 416 (1996), and *United States v. Emuegbunam* 268 F.3d 377 (6th Cir. 2001), establish that a court does not have the authority to consider a motion under Rule 29 filed outside of the 14-day time limit provided in that rule for motions filed after a jury returns a verdict. (*Id.* at 3-4); *see* Fed. R. Crim. P. 29(c)(1).

The government misunderstands the legal basis for Thomas's current motion. He is not filing a new motion for a judgment of acquittal under Rule 29. Instead, he moves for *reconsideration* of Doc. No. 70, my opinion and order "denying the Defense Motion for Judgment of Acquittal" he filed before the jury returned a verdict. (Doc. No. 95 at 1; *see* Doc. No. 69); *see also United States v. Mack*, 831 F. App'x 787, 787 (6th Cir. 2020) (noting that the Federal Rules of Criminal Procedure do

3

not explicitly authorize motions for reconsideration). The government does not point to any jurisdictional time limit on the filing of a motion for reconsideration in a criminal case. (*See* Doc. No. 97). And Thomas filed his motion for reconsideration only four days after the Supreme Court issued *Rahimi*, the decision on which he relies.

Certainly, the Sixth Circuit applies a 10-day time limit to a defendant's motion for reconsideration in a criminal case "unless the local rules of the district court provide otherwise." *United States v. Correa-Gomez*, 328 F.3d 297, 299 (6th Cir. 2003). But the Supreme Court has warned against the "confusion" engendered by erroneously labeling as "jurisdictional" the time limitations for filing motions. *Eberhart v. United States*, 546 U.S. 12, 16 (2005) (holding that Federal Rule of Criminal Procedure 33 is an "inflexible claims processing rule" rather than a "rule governing subject matter jurisdiction") (quoting *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004)). A jurisdictional limitation "delineat[es] the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority" rather than merely prescribing the time by which a party must take a particular action. *Eberhart*, 546 U.S. at 16 (quoting *Kontrick*, 540 U.S. at 455). As I explain below, the permissible scope of a motion for reconsideration is narrow, and Thomas's arguments must clear a high bar in order for me to grant one. But I do not lack the "adjudicatory authority" to consider his motion. *Eberhart*, 546 U.S. at 16.

**B.     THOMAS'S MOTION FOR RECONSIDERATION**

"Although the Federal Rules of Criminal Procedure do not authorize motions for reconsideration, the Supreme Court determined many years ago that defendants may file them." *United States v. Mack*, 831 F. App'x 787, 787 (6th Cir. 2020) (citing *United States v. Healy*, 376 U.S. 75, 78 (1964)). Courts evaluate a motion for reconsideration under the same standard used to evaluate a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). *United States v.*

4

*Thompson*, 580 F. Supp. 3d 503, 505 (N.D. Ohio 2022) (citing *Moody v. Pepsi-Cola Metro. Bottling Co.*, 915 F.2d 201, 206 (6th Cir. 1990)).

This standard is not favorable to movants: "The only circumstances in which it is appropriate to grant a motion to alter or amend judgment is where there is an intervening change in controlling law, newly discovered evidence, a clear error of law, or a need to prevent a manifest injustice." *Thompson*, 580 F. Supp. 3d at 505 (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). Further, "a motion to reconsider generally is not a vehicle to reargue a case; it may not be used to raise arguments that could have been raised on initial consideration." *United States v. LaDeau*, 734 F.3d 561, 572 (6th Cir. 2013).

Thomas selects only one of these grounds for relief. He argues that "*Rahimi* is an intervening change in controlling law that renders reconsideration of the Motion for Judgment of Acquittal appropriate . . . because it brings into doubt the continued viability of the cases outside of the Sixth Circuit on which this Court relied in reaching its decision[.]" (Doc. No. 95 at 3). Thus, Thomas's motion turns on the interaction between the Supreme Court's decision in *Rahimi* and the cases on which I relied to conclude that Thomas's protective order "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force." 18 U.S.C. § 922(g)(8)(C)(ii).

First, my prior opinion. I reasoned that "the language used in § 922(g)(8)(C)(ii) must be interpreted using "the 'ordinary, contemporary, common meaning' of its words," and I concluded that the protective order's "use of the word 'abuse' is sufficient to satisfy the requirements of § 922(g)(8)(C)(ii)" because "the commonly understood definition of 'abuse' includes violent acts involving physical force." (Doc. No. 70 at 2) (internal citations omitted). I relied on the following published cases as persuasive authority in support of this conclusion: *United States v. McGinnis*, 956 F.3d 747 (5th Cir. 2020), *United States v. DuBose*, 598 F.3d 726 (11th Cir. 2010), *United States v. Coccia*, 446 F.3d 233 (1st Cir. 2006), and *United States v. Bostic*, 168 F.3d 718 (4th Cir. 1999).

5

These cases held that if the "common" or "commonly understood" definitions of terms in a protective order "includes" physical force, such a protective order "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force" under § 922(g)(8)(C)(ii). *See McGinnis*, 956 F.3d at 760 ("we hold that if the commonly understood definitions of terms in the protective order include acts involving "physical force," the protective order is sufficient to support a conviction under § 922(g)(8)(C)(ii)"); *DuBose*, 598 F.3d at 731 ("The definition of 'hurt' as a verb includes '[t]o inflict with physical pain.' [citing Webster's Dictionary]. Thus, the order's language restraining DuBose from 'hurting' his wife or her daughters, at the very least, satisfies subsection (C)(ii)'s requirement that the order explicitly prohibit the use, attempted use, or threatened use of 'physical force.'"); *Coccia*, 446 F.3d at 242 ("[T]he commonly understood definition of 'abuse' includes violent acts involving physical force within the definition. This suffices."); *see also United States v. Sanchez*, 639 F.3d 1201, 1205 (9th Cir. 2011) ("[A] conviction under 18 U.S.C. § 922(g)(8) does not require the precise language of (8)(C)(ii) to be contained in a court order. However, a court order must contain explicit terms substantially similar in meaning to the language of (8)(C)(ii).").[1]

In an unpublished case, the Sixth Circuit likewise concluded that "[a]lthough 'domestic violence and abuse' is language which may contemplate a broader range of activity than physical assault, we believe that the language is sufficiently explicit so as to include actual, attempted and threatened physical force within its meaning" and thus "satisf[y] the requirements of 18 U.S.C. § 922(g)(8)(C)(ii)." *United States v. Hopper*, 28 F. App'x 376, 379 (6th Cir. 2001).

---

[1] *Bostic* contains comparatively little reasoning on this point. It says: "The Order's directive that Bostic 'shall refrain from abusing [Kelly]' . . . unambiguously satisfies subsection (C)(ii)'s requirement that the court order prohibit the use, attempted use, or threatened use of physical force." *Bostic*, 168 F.3d at 722. *Bostic*'s characterization of the language from the protection order as "unambiguously" prohibiting physical force coheres with the approaches taken by the other Courts of Appeal, which all held that a prohibited category of behavior whose commonly-understood definition includes an act of physical force is an "explicit[] prohibit[ion]" on physical force. 18 U.S.C. § 922(g)(8)(C)(ii).

Next, *Rahimi*. In that case, the defendant challenged his prosecution under § 922(g)(8), arguing that the statute violated the Second Amendment. *Rahimi*, 144 S.Ct. at 1896. The protection order in *Rahimi* "included a finding that Rahimi had committed 'family violence,'" that this violence "was 'likely to occur again,'" and that the defendant posed "'a credible threat' to the 'physical safety' of" two individuals. *Id.* at 1895. The order also "prohibited Rahimi from threatening [the victim] or her family for two years or contacting [the victim] during that period" except to discuss their child. *Id.*

The Supreme Court explained that this order satisfied both the "requirements of Section 922(g)(8)(C)(i)" and "the independent basis for liability in Section 922(g)(8)(C)(ii)." *Id.* at 1896. But its constitutional analysis "start[ed] and stop[ped] with Section 922(g)(8)(C)(i) because the Government offer[ed] ample evidence that the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others." *Id.* at 1898. It did "not decide whether regulation under Section 922(g)(8)(C)(ii) is also permissible." *Id.* at 1898-99.

Therein lies the problem for Thomas. While *Rahimi* was unquestionably a major case, Thomas must point to "an intervening change in *controlling* law"—that is, new binding authority that changes the result of his prior motion. *Thompson*, 580 F. Supp. 3d at 505 (emphasis added); *see, e.g.*, *Chapman v. General Motors LLC*, 2021 WL 5745695 at *2 and n.3 (E.D. Mich. Nov. 9, 2021) (concluding that a newly-decided Supreme Court case did not merit reconsideration of a prior motion even while noting another district court opinion that "ha[d] persuasive force that would merit close consideration and discussion were the Court looking at this question in the first instance").

*Rahimi* did not address the issue I analyzed in my prior opinion: whether language in a protection order enjoining future "abuse" is explicit enough to qualify that protective order under § 922(g)(8)(C)(ii). (*See* Doc. No. 70 at 2). That is a question of statutory interpretation. *Rahimi*, by

7

contrast, interpreted the Second Amendment to the United States Constitution; it discussed the meaning of § 922(g)(8)(C)(i) only insofar as it related to the constitutional analysis. *See Rahimi*, 144 S.Ct. at 1896, 1898. Even then, *Rahimi* did not comment on the meaning or constitutionality of § 922(g)(8)(C)(ii) at all.[2] *See id.* at 1898-99. So, that case did not change how I must interpret § 922(g)(8)(C)(ii).

Thomas would read *Rahimi* differently. In his eyes, *Rahimi*'s finding that § 922(g)(8)(C)(i) is constitutional on its face implicitly limits the permissible scope of § 922(g)(8)(C)(ii) to situations where a judge has made a "*finding* of dangerousness." (Doc. No. 95 at 4) (emphasis original). But he does not attempt to locate this principle anywhere in the majority opinion issued by the Supreme Court in *Rahimi*. (*See id.*).

Instead, he pivots back to a familiar argument: "Congress used strong and clear limiting language to require that the qualifying order 'by its terms explicitly' forbid physical force. The Supreme Court decision in Rahimi underscores the importance of that statutory limit. The order in this case does not 'by its terms explicitly' forbid physical violence." (Doc. No. 95 at 8). In his Rule 29 motion, Thomas similarly argued: "Congress used strong and clear limiting language to require that the qualifying order "by its terms explicitly" forbid physical force. The Order in this case does not 'by its terms explicitly' forbid physical violence." (Doc. No. 69 at 3).

The only difference between Thomas's current argument and the argument he advanced in his Rule 29 motion is his new contention that *Rahimi* "underscores" the suggested importance of the "strong and clear limiting language" in § 922(g)(8)(C)(ii). So, it is clear the main thrust of Thomas's argument has not changed: that the language of his protective order does not fit the language of the

---

[2] In *United States v. Combs*, No. 23-5121, 2024 WL 4512533 (Oct. 17, 2024), the Sixth Circuit extended the reasoning in *Rahimi* to § 922(g)(8)(C)(ii). The court held that provision is facially constitutional under the Second Amendment because (C)(ii), like (C)(i), fits within "[t]he historic and 'common sense' tradition that allows the disarmament of those who 'pose[ ] a clear threat of physical violence to another.'" *Combs*, 2024 WL 4512533 at *3 (internal citations omitted).

statute under which he was charged and convicted. Unfortunately for Thomas, "a motion to reconsider generally is not a vehicle to reargue a case." *LaDeau*, 734 F.3d 572. Because Thomas's motion for reconsideration ultimately restates arguments I have already rejected, and because *Rahimi* does not require me to interpret § 922(g)(8)(C)(ii) differently than I did in my prior Opinion and Order, I deny his motion for reconsideration.

### IV. CONCLUSION

For the reasons stated above, I deny Thomas's motion for reconsideration. (Doc. No. 95).

So Ordered.

s/ Jeffrey J. Helmick

United States District Judge